MRS. LILY RUTLEDGE v. JOHN H. GARRISON, et al.

Western Section. March 23, 1928.

J. S. Marsh and W. W. Herron, of Trenton, for appellant.
Taylor, Adams & Freeman, of Trenton, for appellee.

SENTER, J.   The complainant, Mrs. Lily Rutledge, filed the original bill in this cause seeking to have an accounting from the executors under the will of her deceased father, and to have the administration of the estate transferred to the chancery court, and also seeking the removal of the executors on the several grounds set out in detail in the original bill.

The executors answered the bill and denied the material allegations, and especially denied that they had wilfully failed to make a report to the county court clerk of Gibson county, and to otherwise comply with the laws of the State in administering said estate.

The Chancellor sustained the bill except as to so much thereof as sought the removal of the executors.   From this decree the defendants have appealed to this court and have assigned numerous errors.

We will not undertake to discuss the several assignments of error in the order in which they are made, but will review the case and determine the issues presented by the assignments of error on this appeal.

The Chancellor filed a finding of the facts and a memorandum opinion, which are contained in the record.   The material facts as found by the Chancellor and in which we fully concur as being supported by a preponderance of the evidence, are as follows:

"J. F. Garrison died testate, in the month of September, 1923. His will was probated at the October Term, 1923, of the county court of Gibson county.   Bob Ed Garrison and John H. Garrison were named as executors, and, by the terms of the will were relieved from making bond as such executors.

"The third and fourth clauses of the will read as follows:
'(3)   I bequeath and give unto my children John Garrison, Bob Ed Garrison, T. B. Garrison, Lily Rutledge, F. A. Garrison, C. L. Garrison, and to the heirs or children of J. F. Garrison, deceased share and share alike, my farm and all personal prop-

erty located in the Tenth Civil District of Gibson county, Tennessee, which farm is known and bounded as follows, to-wit: (We omit description.)

" ' (4) I direct my executors whom I will hereafter name, to sell and dispose of the said above farm, being about ninety-two acres, more or less, all of the personal property as soon as practicable after my death and divide the proceeds of the same among my children and the heirs of my deceased son, J. F. Garrison, share and share alike.'

"And the fifth clause reads as follows: ' (5) I however, direct that from that part or portion going to my son, C. L. Garrison, that the sum of $517.87 be deducted, and from that part or portion going to my son, T. B. Garrison, that the sum of $337.65 be deducted, and from that portion going to my son, F. A. Garrison, that the sum of $103.15 be deducted, and from that part or portion going to the heirs of J. M. Garrison, deceased, that the sum of $1315 be deducted. I do this for the reason that I have heretofore advanced and paid for them the various amounts as above set out, and therefore desire to charge them with the same and have it deducted from their share going to them under this will. If, however, any of them should pay me during my life any of the amount thus due me, or so advanced, and paid to them and for them, then I direct that proper credit be allowed and given them for the same by my executors.'

"The complainant is the Mrs. Lily Rutledge named in the will. She is the sister of the defendant executors. Since her marriage, which was unsatisfactory to her family, the relations among her and her husband, on one side, and the executors on the other, have not been cordial.

"This may, in some measure, account for the otherwise unaccountable conduct of the executors in the administration of this estate.

"The executors qualified as such on the 19th day of October, 1923. Some time later, probably about December 5, 1923, a sale was had of the personal effects.

"No inventory nor report was ever filed by the executors until October 28, 1926, after the bill in this cause was filed. Their sole, excuse is that they understood the clerk of the county court to say that it was not necessary for them to make any report. The clerk did not tell them anything of the sort, nor did he say anything that might reasonably be so construed.

"Notwithstanding nearly four years had elapsed between their qualification and the filing of the bill, the land had not been sold, and has not yet been sold. In the meantime the land has

been rented to one of the brothers, with whom one of the executors has lived as a boarder.

"It is shown that since their qualification, the executors have expended different sums of money belonging to the estate for insurance, repairs, taxes and seeds.

"The report filed by them shows that on January 16, 1925, they paid for roofing and glass $6.25; on January 10, 1925, for hauling $3.25; June 23, 1924, for hay rope $4.50; February 17, 1925, for roofing $4.50; February 11, 1926, for sawing $3.12; February 12, 1926, nails $1.40; March 4, 1926, for seed, $26.75; January 1, 1924, for lumber $1; March 22, 1924, clover seed $7.75.

"At the sale of the personal property one of the executors became the purchaser, and he and two other brothers, who were purchasers, executed their notes for their purchases. These notes have never been collected, and no effort has been made to collect them.

"At the date of the testator's death, J. H. Garrison, one of the executors, owed to the testator notes aggregating $688.62; and his brother, T. B. Garrison owed notes aggregating $294. None of these notes have been paid, and there has been no effort to collect.

"Of the amounts collected by them, they have loaned, on unsecured notes, to themselves, and to their brothers, sums totaling more than $1,000.

"They have paid notes due from C. L. Garrison (a brother), to other parties, and have cancelled and delivered notes owing by him to the estate to the amount of $1950, in exchange for which they have accepted a deed to themselves as executors of his interest in the estate.

"There is now in their hands, in money, the sum of $31.80 as shown by their report.

"They have never made any real effort to sell the land, as directed in the will, but have refused an offer that was, probably, for a higher price than can now be obtained.

"Not one cent has ever been paid to the complainant.

"No effort has ever been made to collate the advancements."

Upon the facts as above set out, the Chancellor in the memorandum opinion, continues with the following statement:

"This record forces the court to one of two conclusions, either that the defendants are deliberately attempting to deprive the complainant of her distributive share in this estate, or that they are totally and wholly incompetent to perform the duties incumbent upon them as executors. It is apparent that if left in their hands the estate is liable to great waste and dissipation. The bill seeks their removal as executors. I know of no power

that this court has to remove them as executors. But the court has the power to order a transfer of this estate, to restrain the defendants from further action as executors; to appoint the Clerk and Master receiver; to order the executors to turn the effects in their hands over to the receiver; to order an account, and to direct the receiver to endeavor to effect a sale of the land. However, any sale made by the receiver should be subject to confirmation by the court.''

The decree of the Chancellor follows the opinion as above set forth.

It is contended for appellants that the chancery court was without jurisdiction to make the decree as made by the Chancellor in this cause, or to entertain the bill. It being contended by appellants that the jurisdiction in such matters is in the county court and not in the chancery court. It being further contended by appellants that in any event the Chancellor is without jurisdiction to remove executors. We cannot agree to the conclusions and contentions of learned counsel for appellants on these several questions. The Chancellor did not remove the executors, but stated that he was of the opinion that he was without power or jurisdiction to remove them. However, we are of the opinion that under the facts as disclosed by this record, the Chancellor correctly held that the chancery court did have jurisdiction to compel an accounting, and also to make distribution to the complainant of her distributive share in the estate of her deceased father; and also to appoint a receiver to protect the estate against waste. (Taliferro v. Wright, 1 Shan. Cas., 178; Linville v. Dorby, 1 Baxter, 306; Bryan v. Puckett, 3 Hayw., 252; Parks v. Parker, 3 Cooper Chan. Rep., 647; and numerous other cases.)

Appellants have cited and rely upon Kerr v. White, 9 Bax., 161; Deadrick v. Armour, 10 Humph., 586; Coffin v. Ruffin, 4 Cold., 489. An examination of these cases do not support the contention of appellants.

We are of the opinion that there is no error in the decree of the Chancellor. We will not burden this opinion by a more detailed discussion of the assignments of error, but upon a full consideration of the case all assignments of error must be overruled and the decree of the Chancellor affirmed. The cause is remanded to the chancery court of Gibson county for the carrying out of the decree. The cost of this appeal will be paid by appellants and sureties on the appeal bond.

Owen and Heiskell, JJ., concur.